THE HOME ELECTRIC LIGHT AND POWER COMPANY *v.*
THE GLOBE TISSUE PAPER COMPANY.

[No. 17,746.    Filed February 2, 1897.]

INJUNCTION.—*Appeal from Interlocutory Order Overruling a Motion to Dissolve.—Sufficiency of Complaint.*—A complaint for injunction first attacked on appeal from the court below for refusal to dissolve a temporary restraining order, need not make out a case which would entitle the plaintiff to relief at all events at the hearing, but will be sufficient if the facts averred show a proper subject for investigation in a court of equity.  *p. 679.*

AFFIDAVITS.—*Conflicting Affidavits Read in Evidence.*—This court on appeal from an interlocutory order overruling a motion to dissolve an injunction will not determine the weight of conflicting affidavits given in evidence in the court below at the hearing thereof.  *p. 679.*

RECORD.—*Bill of Exceptions.—Interlocutory Order.*—In an appeal from an interlocutory order overruling a motion to dissolve an injunction, the complaint, answers, and interlocutory order belong to the record proper without a bill of exceptions.  *p. 681.*

BILL OF EXCEPTIONS.—*When Contains Matter Belonging to Record Proper.*—The office of the bill of exceptions is to bring into the record matters which do not belong to the record proper; and when the bill of exceptions embraces matter which should be in the record proper, the law does not require a consideration thereof on appeal, unless some statute so specially provides.  *p. 681.*

From the Elkhart Circuit Court.  *Affirmed.*

*J. S. Dodge, O. Z. Hubbell, J. M. Van Fleet* and *V. W. Van Fleet,* for appellant.

*Chamberlain & Turner, Baker & Miller* and *Osborne & Zook,* for appellee.

McCABE, J.—The appellee sued the appellant to enjoin it from doing certain acts and asking a temporary restraining order until the final hearing.  The trial court granted a temporary restraining order until the

final hearing, and afterwards the defendant moved to dissolve the same, and affidavits were read in support of and against the right of the plaintiff to such an order.

The motion to dissolve was overruled, and from this interlocutory order this appeal is prosecuted. Burns' R. S. 1894, section 658 (R. S. 1881, 646).

The errors assigned call in question the sufficiency of the facts stated in the complaint to constitute a cause of action for an injunction, or warrant relief by way of injunction, and the action of the circuit court in overruling appellant's motion to dissolve the restraining order, in granting the injunction upon the evidence and in overruling appellant's motion to modify the judgment. We presume counsel mean to say, overruling appellant's motion to modify the restraining order, as there was no judgment, and their motion to modify was not to modify the judgment, but to modify the restraining order.

The substance of the complaint is, that the plaintiff, the Globe Tissue Paper Company, is a corporation organized under the laws of the State of Indiana, engaged in the manufacture of paper by water power, and has been so engaged for many years prior to May 29, 1891; that on said day, the St. Joseph Hydraulic Company, a corporation, was the owner of an undivided third of the water power of the St. Joseph river, furnished and produced by reason of a dam constructed across said river in the city of Elkhart by the Elkhart Hydraulic Company some years prior thereto, which water so owned by said St. Joseph Hydraulic Company was to be and has been used on the north side of the St. Joseph river by means of a raceway, owned by said St. Joseph Hydraulic Company on the north side of the St. Joseph river, which connects with the water of the St. Joseph river above said dam

and extends upon the north side of said river west-wardly to a point below said dam; that said St. Joseph Hydraulic Company had arranged for factory sites for the purpose of furnishing and leasing to factories and mills water power out of its said hydraulic head-race; that on said day there were standing upon the bank of said hydraulic head-race and between it and the St. Joseph river, large factory buildings, which were then empty and unoccupied, but which had theretofore been used as a paper mill; and that said company had flumes connecting with said buildings and six water wheels, all set and ready for use, and a tail-race for the purpose of carrying off the water coming from said raceway and flumes and through the water wheels in said buildings, and emptying the same into the St. Joseph river below said dam; that plaintiff was desir-ous of purchasing said buildings and rearranging the machinery therein for the purpose of operating a paper mill plant, and to that end plaintiff and the St. Joseph Hydraulic Company on said day entered into a parol agreement, by virtue of which the St. Joseph Hydraulic Company, for the sum of $2,000.00 yearly rental, payable quarterly by plaintiff, agreed to fur-nish the Globe Tissue Paper Company 9,927 cubic feet of water per minute under a working head of ten feet and more or less proportionately as the head might vary below or above said ten feet above named from said hydraulic head-race, to be delivered to said Globe Tissue Paper Company through said flumes adjacent to said race for the term of twenty-five years. It was further agreed between said parties that said contract should be reduced to writing and be signed by each; that afterwards plaintiff caused a formal written lease, in accordance with the terms of said parol con-tract, to be drawn up and signed by plaintiff, which was delivered to said hydraulic company, but said

company as yet has not executed the same; that after said agreement was entered into, and upon the faith thereof and in reliance thereon, the plaintiff purchased said factory buildings and the land upon which they stand and placed therein a large amount of costly machinery for the manufacture of paper at an expense of over $25,000.00; that at the time said agreement was made said St. Joseph Hydraulic Company well knew the condition and location, number and height of the water wheels contained in said building, and well knew the location and condition of the tail-race connecting said mill and said wheels with the St. Joseph river; that plaintiff completed its said plant so purchased by it, and began the manufacture of paper in the same on the 1st day of October, 1891, and has been in possession and so engaged ever since, except when said mill was temporarily shut down, caused by the wrongful conduct of the defendant, hereinafter alleged, and plaintiff has, during all that time, kept and performed all its part of the agreement with said hydraulic company. It was further agreed on the part of said hydraulic company with plaintiff that the plaintiff company should have a priority of right to use said water out of said hydraulic race over all other leases of said St. Joseph Hydraulic Company; that on or about the — day of May, 1894, the St. Joseph Hydraulic Company leased to the defendant out of said head-race certain water power, which defendant took with full knowledge of and subject to plaintiff's lease aforesaid; that defendant has drawn water from said race ever since, and threatens to continue so to do, as hereinafter stated, with notice and knowledge of plaintiff's rights; that said defendant is a manufacturing corporation, and has constructed its plant 150 feet westward of plaintiff's plant; that defendant began operating its plant about the — day of

————————, 1894, and using as part of its power, water power from said hydraulic company's head-race; that from the time said defendant began using water from said head-race until about three weeks ago said race furnished enough water so that plaintiff could run its said mill by the use of water from said raceway, but within the past three weeks, on account of the low stage of water in the St. Joseph river, there has not been enough in said head-race to furnish plaintiff 9,927 cubic feet of water per minute under a working head of ten feet, the amount of water contracted for by it; that the amount of water coming down said head-race in the last three weeks has not been more than enough to make 9,927 cubic feet of water per minute, if plaintiff had had the use of all said water that came down said race; that the water wheels of plaintiff, located as they were at the time of the purchase of said buildings by plaintiff, and as they now are, will afford a ten foot head in ordinary stages of the water in the St. Joseph river when the water in said raceway is not drawn off and lowered by the wrongful use of said water by the defendant; that notwithstanding the plaintiff's priority of right, the defendant has for the last three weeks, and now continues to, wrongfully and without right, use said water without reference to plaintiff's rights, using nearly all of the water which has for the past three weeks come down said race; that for the past three weeks the defendant has been constantly, wrongfully and without right drawing off water from said head-race, and has thereby decreased plaintiff's head to such an extent that plaintiff cannot get water enough from said race to run any of its said water wheels or machinery, nor the amount of water contracted for, and was obliged, by reason of the wrongful conduct of the defendant, to shut down

plaintiff's said plant and stop its said mill, throwing out of employment all of plaintiff's employes, twenty-five in number; that plaintiff has a large business in exporting and selling its manufactured paper, and has many orders for paper on hand from various parties which are past due and coming due, but which plaintiff will be unable to fill and send out on account of the wrongful conduct of defendant, aforesaid; that plaintiff has no other way of running its said mill than by said water power; that defendant has, in connection with its water wheels a large boiler and two steam engines for the purpose of furnishing power for the defendant's said factory, which plaintiff is informed and believes are sufficient to run said factory without the use of said water power. The plaintiff has been damaged by defendant's said wrongs $5,-000.00; that all the plant and property of defendant is worth less than $20,000.00; that the same is now mortgaged to Justus L. Broderick for $20,000.00; that said defendant, as plaintiff believes, is, or soon will be insolvent.

Prayer for a temporary restraining order, restraining defendant from using any of said water power, excepting such surplus water in said head-race as may be therein contained hereafter over and above the amount of power so contracted for by plaintiff, to-wit, 9,927 cubic feet of water per minute, and on the final hearing that the injunction be made perpetual during the remainder of the time plaintiff's contract is to run. The temporary restraining order was issued in accordance with the prayer.

The objections urged against this complaint are general, and amount to a contention that it fails to show an equitable right or a clear right to the water; that the injury is not permanent but temporary; that the injury done and threatened is not irreparable, etc.

But we think the complaint sufficient to withstand an attack on it for the first time in this court. It is true, the trial court overruled a demurrer to it, but that ruling is not assigned for error.

On appeal from an interlocutory order overruling a motion to dissolve an injunction, as here, where one of the points made for reversal was the alleged insufficiency of the complaint, this court, borrowing from an approved author, said: "It is not, however, necessary that a case should be made out which would entitle the plaintiff to relief, at all events at the hearing. It is enough if the court finds upon the pleadings and the evidence a case which makes the transaction a proper subject for investigation in a court of equity. The question for the court upon the interlocutory application is not the final merits of the case. When the case comes on to be heard, the final merits may be very different. But this consideration will not prevent the court from breaking in upon the proceedings at law, where from the merits to be gathered from the pleadings and conflicting affidavits there appears on the whole a case proper for the investigation of the court, and a fair question to be reserved till the hearing." Kerr Inj., p. 14; *Spicer* v. *Hoop,* 51 Ind. 365, at pp. 371, 372.

The only evidence was by way of affidavits read on both sides. The affidavits in support of the application fully support the complaint and warranted a temporary injunction. In such a case we can no more determine the weight of conflicting affidavits than we can settle conflicts in the evidence on appeal from a final judgment. *Spicer* v. *Hoop, supra; Schnurr* v. *Stults,* 119 Ind. 429; *Louisville, etc., R. W. Co.* v. *Hendricks,* 128 Ind. 462.

The defendant's affidavits tended to prove some of the allegations in the second paragraph of its answer,

the first paragraph being a general denial. Those allegations are that "defendant says that it is the duty of the plaintiff to lower its wheels three feet and to lower its tail-race two feet; that the plaintiff under a seven foot head wastes constantly more than fifty-six effectual horse powers because of want of repairs in their wastes; that under a greater head it wastes more water; that the defendant's wheels are set skillfully and three feet lower than the plaintiff's; that the plaintiff cannot use the water at a less head than four feet; that when the plaintiff has four feet of water the defendant has seven feet, and can use all the power it needs."

The affidavits were conflicting on all these points, but the affidavits on behalf of the plaintiff concede that the plaintiff does waste some water, but not as much as the affidavits on the other side show, and no more than is ordinary in such cases.

On this point appellant's counsel plant themselves in a vigorous contention that there being no conflict on the point that there is a needless waste of water by appellee, that there ought to be a reversal.

But it is impossible to see how it should make any difference in the legal rights of the appellant if the appellee saw fit to waste all the water it had purchased. It is not contended that it at any time took more than 9,927 cubic feet per minute. This it had purchased and paid for, and it had a right to use it or waste it just as it chose. If the appellant desired to get the use of the part thereof not needed by appellee, it ought in good conscience to get the consent of the owner, and if that consent could not be got without paying for it, that was its plain duty. What we have already said disposes of the motion to modify the temporary restraining order.

But we may suggest a serious question presented

by the record, but not mentioned by counsel on either side, and this court does not decide the question. The complaint, answer and interlocutory order are all in a bill of exceptions, filed and set out in the transcript. These are matters that belong to the record proper without a bill of exceptions. Neither of these necessary parts of the record proper appear therein otherwise than in the bill of exceptions. The office of the bill of exceptions is to bring into the record matters which do not belong to or appear in the record proper. And when the bill of exceptions embraces matters, which in regular course ought to be in the record proper, the law does not require them to be considered on appeal, unless some statute so specially provides. *Bowen* v. *State*, 108 Ind. 411, and authorities there cited; *Gray* v. *Singer, Admr.*, 137 Ind. 257; 3 Ency. of Plead. and Prac., pp. 404-406, and authorities there cited.

Finding no available error in the record, the temporary restraining order is affirmed.