## Case No. 18,168.
### YOUNG v. MUTUAL LIFE INS. CO. OF NEW YORK.
[2 Sawy. 325; [2] 6 Am. Law T. Rep. 28; 2 Ins. Law J. 289; 4 Bigelow, Ins. Cas. 1.]
Circuit Court, D. California. Jan. 20, 1873. [3]

INSURANCE POLICY—FORFEITURE PROVISION— WAIVER.

1. It is a general rule that forfeitures are not favored, and that provisions in contracts for forfeitures are strictly construed.

2. These principles apply to forfeitures in policies of insurance for non-payment of premiums when due.

3. Forfeitures provided for in policies of insurance are for the benefit of the party insuring, and may be waived by such party.
[Cited in Masonic Mut. Ben. Ass'n v. Beck, 77 Ind. 206.]

4. Where subsequent to the accruing of a forfeiture under the conditions of a life policy for non-payment of premiums, the insurer, with knowledge of the facts, by its own acts, or those of its agents, recognizes the contract as still subsisting, and manifests an intent not to take advantage of the forfeiture, and does no act prior to the death of the assured indicating a purpose to claim a forfeiture, the court will be justified in finding a waiver of the forfeiture.
[Cited in Pendleton v. Knickerbocker Life Ins. Co., 7 Fed. 178.]

5. In such cases, the liability of the insurer accrues on the death of the assured, and it is too late afterward to claim for the first time the benefit of a forfeiture.

On June 5, 1867, McPherson Young made application to H. S. Homans, general agent of the Mutual Life Insurance Company of New York for the Pacific coast, at the office of said company, in the city of San Francisco, for a policy of insurance on his life for $5,000, and said Homans delivered to him a memorandum of agreement in writing, bearing date on that day, acknowledging the receipt of "ninety-nine dollars and thirty cents, being the first one fourth annual premium on his application for a policy of in-

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]
[3] [Reversed in 23 Wall. (90 U. S.) 85.]

surance of the Mutual Life Insurance Company of New York, for the sum of five thousand dollars, on the life of Mack P. Young, payable at 45, or death, and premiums paid up in ten years. Said policy of insurance to take effect and be in force from and after the date hereof, provided that said application shall be accepted by the company; but should the same be declined or rejected by the said company, then the full amount hereby paid will be returned to said applicant upon the production of this receipt." The application of said Young was transmitted by Homans to the defendant's office in New York by steamer, the time of passage at that time being from twenty-three to thirty days. The application having been accepted, a policy was duly made out, signed and sealed, and transmitted to said Homans at San Francisco, and was received by him on or about August 2, 1867. The policy bears date April 5, instead of June 5, the date of the foregoing receipt, and, consequently, the time of payment indicated by the two writings does not correspond. The policy recites the consideration to be $96.60 paid by Young, and of the quarter annual payment of a like amount on or before the sixth day of April, July, October and January in every year. The first quarter's premium, the receipt of which is acknowledged in said memorandum, and in said policy, was not in fact paid in cash, but the promissory note of said Young was given therefor, payable in sixty days, without grace, which note fell due August 4, 1867. The policy states that it is issued and accepted "upon the following express conditions and agreements," among which are: "Second—If the said premiums shall not be paid on or before the days above mentioned for the payment thereof, at the office of the company in the city of New York (unless otherwise expressly agreed in writing), or to agents, when they produce receipts signed by the president or secretary, then, in every such case, the said company shall not be liable for the payment of the sum assured, or any part thereof, and this policy shall cease and determine. Third—In every case, when this policy shall cease and determine, or become or be null and void, all payments therein shall be forfeited to this company." Attached to the policy were two regular receipts duly made and signed by the proper officers in New York, dated at New York, April 6, and July 6, 1867, respectively, with blanks to be countersigned by the agent for the Pacific coast, purporting to be for the premiums for the two quarters, commencing at their respective dates. These receipts, upon their arrival at San Francisco, were duly countersigned by said H. S. Homans, agent, stamped, and the stamps canceled with the San Francisco office canceling stamp on August 2, 1867, as the date of the canceling marks on said receipts show. On August 8, the following letter was addressed from the office of said defendant in San Francisco to said Young: "San Francisco, August 8, 1867. M. P. Young, Esq., Vallejo, Cal.—Dear Sir: Your policy of insurance with the Mutual Life Insurance Company has arrived. Please inform me whether I shall send it to you at Vallejo, or if you will call and get it when you are in the city? Respectfully yours, H. S. Homans, General Agent. Per R. W. Heath, Jr." Heath was a clerk in the said office under Homans, but whether said note was delivered to or received by said Young, or when or in what manner forwarded or when or in what manner it came to the possession of the plaintiff, the administrator, does not appear from the evidence. No notice of the acceptance of said application or of the issue or arrival of said policy is shown to have been delivered to or received by said Young. Nor was any demand made upon him for further payment, nor any receipt or notice requiring payment presented to him, and neither said note, nor any subsequent installment of premium, was in fact paid; said note was never surrendered or offered to be surrendered, but said note and said receipts are still in possession of said company. On August 21, 1867, said McPherson Young was shot with a pistol at Vallejo, and mortally wounded. On the next day he was transported to St. Mary's Hospital in San Francisco, where he was confined in bed from the time of his arrival till September 20, 1867, when he died from the effects of his wounds. From the time of the shooting till his death said Young was neither physically nor mentally competent to transact any matters of business. After the death of Young, but at what date does not appear, the said general agent wrote upon the back of the policy with pencil, the words "Cancel, dead," and sent the policy to the defendant in New York. The policy was canceled October 31, 1867, by tearing off the seal of the company and the signature of the president; cutting a square hole out of the body and writing upon the back in blue ink the words. "C. Oct. 31, 67, Homans." Shortly after the death of said Young, notice was duly given to the general agent, and payment demanded. but refused on the ground that the defendant was not liable. The plaintiff [James Young] is the administrator of deceased.

B. S. Brooks, for plaintiff.

McAllisters & Bergin, for defendant.

SAWYER, Circuit Judge (after stating the facts). It is not denied that there was, in fact, a contract made. The receipt and memorandum given to the applicant, dated June 5, purports upon its face to insure him from its date, provided, only, that the application should be accepted by the defendant. It was accepted, and a policy in due form fully executed and sent to the San Francisco office to be delivered. These acts, it is conceded, constitute a contract.

But it is insisted that, although the memorandum of agreement of June 5 does not specify all the terms of the contract, it is implied that the policy shall be upon the usual terms embraced in the company's policies; that the acceptance was upon the terms of the policy, as it was actually prepared and executed, and that, under these terms, the policy became forfeited for non-payment of premiums, as required by one of its express conditions. The defendant claims that the note given for the first quarter's premium, not having been paid when due, a forfeiture resulted. If not, then, that a forfeiture accrued upon the non-payment of the second quarter's premium, which fell due on July 5, if the date of the policy, or on September 5, if the date of the receipt and memorandum of June 5 is to control.

The plaintiff insists that it is incompetent to show a non-payment of the note against the acknowledgment of the receipt of the money in the memorandum of June 5, and also in the policy, for the purpose of defeating the contract; that the note was accepted as payment, and the defendant is estopped from denying it for such a purpose. It was so expressly held in Insurance Co. v. Fennell, 49 Ill. 180. This, I suppose, is on the principle recognized by the authorities, that such acknowledgments are often to be regarded as presenting a double aspect—firstly, as a simple receipt for money; secondly, as constituting a part of a contract. In the first aspect, and for collateral purposes, such as the recovery of the money, the acknowledgments may be contradicted. In the second, and for the purpose of defeating the operation of the contract, they cannot be contradicted. These distinctions are discussed in Peck v. Vandenberg, 30 Cal. 23, and cases there cited; Ashley v. Vischer, 24 Cal. 322; Goit v. Insurance Co., 25 Barb. 192. But I shall not rest my decision on that ground.

The plaintiff further insists that, if there was a forfeiture it was waived by defendant. It is elementary law that forfeitures are not favored, and that provisions for forfeiture must be strictly construed. The authorities, also, hold that these principles are applicable to forfeitures in insurance policies; that the provisions for forfeiture are inserted for the benefit of the companies, and may be waived by them; and that courts will find a waiver upon slight evidence. See, among many cases, Ripley v. Aetna Ins. Co., 29 Barb. 557; Id., 30 N. Y. 136; Goit v. National Protection Ins. Co., 25 Barb. 189; Baker v. Union Life Ins. Co., 6 Rob. (N. Y.) 394; Boehen v. Williamsburgh City Ins. Co., 35 N. Y. 131; Bouton v. American Mut. Life Ins. Co., 25 Conn. 542; Pino v. Merchants' Mut. Ins. Co., 19 La. Ann. 214; Insurance Co. v. Webster, 6 Wall. [73 U. S.] 129.

Apply these principles to the facts of this case. The policy bears date April 5, and the receipts prepared by the company correspond with this date. The company, therefore, regarded the second quarter's premium as due July 6, and acted upon that idea, although the application was made, and the first memorandum, receipt and contract given on June 5. The promissory note given for the first quarter's premium being payable without grace, fell due August 4. It will be seen that the condition of the policy imposing a forfeiture required payment to be made "at the office of the company, in the city of New York, or to agents," when they produce receipts signed by the president or secretary, "unless otherwise expressly agreed in writing." There is no evidence in this case of its having been otherwise agreed in writing. It does not appear that the policy was received at the San Francisco office before the second of August. At or about the sixth of July the policy must have been in defendant's office in New York, which would give twenty-seven days to August 2 to make the passage to San Francisco. The defendant knew, at the time of dispatching the policy, that the second installment of premium had not been paid at the office in New York. It also knew that it could not be paid to its agents here, in accordance with the terms of the contract, so as to be obligatory upon defendant, for the reason that the only receipt duly signed, as specified in the policy, authorizing the payment to its agents, was attached to the policy, and would not reach San Francisco till the month of August, a month after it was due. The defendant did not expect payment at its office in New York City, or it would not have sent its receipt to its agent to enable him to receive payment. The defendant, then, by its officers in New York, transmitted the policy and receipts with knowledge that payments had not, and would not, be made at the office in New York, and that it could not be made elsewhere in the mode required by the terms of the contract for a month after due. Yet the policy was sent with an intent that it should be delivered, and payment received by its agent in San Francisco, although it knew that there must necessarily be a forfeiture upon the strict letter of the contract. Also, after the receipt of the policy at San Francisco, on the second of August, nearly a month after the second installment fell due, according to the terms of the policy, the defendant's agent, necessarily knowing that payment had not been made, stamped and countersigned the receipt, ready for delivery upon payment, thereby treating the agreement as still in force. Again, on the eighth of August, four days after the note given for the first quarter's premium fell due, and after default in payment, and necessarily with knowledge of non-payment of both the note and second installment, the agents of the defendant addressed to Young the note set out in the findings of facts.

This act, after the forfeiture, if any there was, had attached, recognizes the agreement as being still in force. The letter does not even demand payment, or refer to the fact of non-payment, or fix any time when the insured should call for the policy, or make payment. It simply notifies him that his policy has arrived, and asks whether it should be sent to him at Vallejo, or whether he would call and get it, when in the city, implying that it would be at his option to have it sent to him at once, or wait his convenience till he should come to the city, and be able to call for it. The defendant manifested no haste or anxiety upon the subject, for the policy was on hand from the second to the eighth of August at least, before the notice to Young was even written, and it does not appear when it was sent. It does not appear that this or any other notice reached him. No other act of the company is shown inconsistent with this action, or tending in the slightest degree to show an intention to insist upon a forfeiture till after the death of Young, when the policy was canceled October 31, payment of the loss having before been refused.

It could hardly have been expected that Young would call to make the second payment until notified whether the risk had been accepted, especially as there was ample time between June 5, when the application was made, and the fifth of September, the time when the next payment would have fallen due, had the date of the policy agreed with the date of the application, and the preliminary memorandum of agreement given to him by defendant's agent in San Francisco. It was, doubtless, supposed that notice of acceptance or rejection would be given before the note for the first quarter's premium would fall due. But however this may be, the several acts of the defendant, and all its acts, and the acts of its officers in relation to the matter shown to the court, which were performed subsequent to the accruing of the forfeiture, if any accrued, treat the agreement for insurance as still in force. They affirmatively indicate an intention not to insist upon a forfeiture, and had the accident and death not occurred, there can be no doubt, from the facts shown, that even as late as the death of Young, the premium would have been received and the policy delivered. In the case cited by counsel of Chipman against the same defendant, tried in this court a year ago, there was no act of any kind shown on the part of the company indicating an intention to waive the forfeiture, or in any way recognizing a subsisting contract. Whereas, in this case, all the acts of the company, after the forfeiture accrued and prior to Young's death, shown to the court, recognize the contract as still subsisting, and manifest an intention not to claim a forfeiture.

I think, upon the facts, the court must find a waiver of any forfeitures which had accrued, and that under the circumstances, after the death of the assured, it was too late, for the first time, to insist upon the forfeiture. Let the plaintiff have judgment for the amount of the policy, less one year's premiums, and interest from the time payment should have been made.

[The above judgment was reversed by the supreme court. 23 Wall. (90 U. S.) 85.]