## Risch et al. *v.* Burch.

[No. 21,757. Filed May 23, 1911.]

1. INJUNCTION.—*Temporary.*—*Prevention of Trespass upon Land in Plaintiff's Possession.*—In a suit to quiet title a temporary injunction may be granted, as ancillary relief, to prevent the defendant from tresspassing upon land in plaintiff's possession, where the object of the trespass is to remove the oil or gas under such land, or some other part of the substance of the land. p. 625.

2. INJUNCTION.—*Oil and Gas Wells.*—*Complaint.*—*Inferences.*—An allegation in a complaint to enjoin defendants from sinking an oil and gas well upon plaintiff's land, that defendants had unlawfully entered upon such lands with a drilling rig and were threatening to sink an oil and gas well, and would do so, unless restrained, sufficiently shows a purpose on the part of defendants to remove the oil and gas found. p. 625.

3. INJUNCTION. — *Temporary.*—*Complaint.*—*Discretion.*—*Evidence.* —*Appeal.*—On an appeal from an interlocutory order granting a temporary injunction the complaint will not be subjected to any technical tests, nor will the trial court's discretion in granting such injunction be interfered with, where there is no abuse of such discretion, the rule being that such order will be upheld where the complaint and the evidence show that the transaction in question is a proper subject for investigation in a court of equity. p. 625.

4. INJUNCTION. — *Temporary.* — *Contract.* —*Construction.*—*Discretion of Court.*—The granting of a temporary injunction in reference to the property in litigation is largely discretionary with the trial court, and though the ultimate decision of the case depends upon the construction of a contract, such construction does not enter into the question of the propriety of granting such injunction. p. 626.

5. CONTRACTS.—*Gas and Oil Leases.*—*Rentals.*—*Forfeitures.*—A

gas and oil lease providing that in case no well was sunk on the premises as provided in the contract "within 120 days from this date, then this grant shall become null and void" unless the lessee "shall thereafter pay to the first party [the owner] at the rate of $20 for each month thereafter such commencement is delayed," does not create the relation of landlord and tenant, and a failure of the lessee, where no well was sunk, to make the payments as stipulated, followed by a notice from the owner of a forfeiture of the contract, determines such contract. p. 627.

From Pike Circuit Court; *John L. Bretz*, Judge.

Suit by Amos Burch against Henry Risch and others. From an interlocutory order granting a temporary injunction, defendants appeal. *Affirmed.*

*W. D. Robinson, W. E. Stilwell, Samuel Emison* and *Leroy Wade*, for appellants.

*Richardson & Taylor, J. W. Wilson* and *J. W. Brumfield*, for appellee.

Cox, J.—This is an appeal from an interlocutory order granting a temporary injunction to appellee, restraining appellants from drilling an oil or gas well on the lands of appellee until the final hearing of the cause instituted by him against them to quiet his title to such lands and for a permanent injunction. The cloud on his title, against which appellee is seeking relief, grows out of a contract between appellee and appellants for the exploration by appellants of appellee's lands for oil and gas.

The assignments of error deny the sufficiency of the complaint and of the evidence to sustain the action of the trial court in granting the temporary injunction.

The complaint, the sufficiency of which is questioned first in this court, contains all of the allegations necessary to make a good short-form complaint to quiet title to real estate, and is admittedly good to secure that relief as against a demurrer for want of facts. To these allegations are added the following: "That said defendants have unlawfully entered upon said land with what is known as a drilling outfit, and placed it in position thereon, for the

purpose of drilling an oil and gas well on said land, and are intending, and threatening to drill such well thereon, and will so drill it unless restrained from so doing."

The conclusion is a prayer for an order restraining defendants pending the hearing, and for a perpetual injunction and the quieting of the plaintiff's title as final relief.

The time of the hearing for the temporary injunction was agreed upon, and the matter was submitted to the trial judge on the verified complaint and the evidence on both sides.

It appears that the appellee, then the owner and in possession of the real estate in controversy, consisting of forty acres of land in Pike county, on December 15, 1909, entered into a contract with appellants for the exploration of the land for oil and gas. This memorandum of agreement, as it is designated therein, omitting certain wholly immaterial parts, reads as follows:

"Said party of the first part, for and in consideration of the sum of $40, in hand paid, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained, hereby grants and conveys to said party of the second part all of the oil and gas in and under the following described premises, together with the exclusive right to enter thereon at all times for the purpose of drilling and operating thereon, and of producing therefrom said oil and gas, and to erect and maintain all buildings and structures and to lay and maintain all surface rods and pipes necessary for the production or transportation of oil and gas, to, from or upon such premises as may be operated by said second party, excepting and reserving, however, to the party of the first part the one-eighth part of all oil produced and saved from said premises hereinafter described, to be delivered in pipe-line or tank with which second party may connect said wells, namely: [Here follows a description of the premises.] To have and to hold the above-described premises for a period of one year from `the date hereof and as much longer as gas and oil are found in paying quantities on said premises or the rentals paid as herein provided for, upon the following conditions: If gas only is found, second party agrees to pay first party $200 each year for the gas from each

well while it is being marketed off the premises, the first party to have gas free of cost to heat all stoves and light all jets in dwelling-house on said premises during the same time. In case no well is commenced on said premises within one hundred twenty days from this date, then this grant shall become null and void, unless second party shall thereafter pay to first party at the rate of $20 for each month thereafter such commencement is delayed, payment to be made by depositing the amount thereof in the First National Bank of Winslow, or by check delivered to the first party."

It is conceded that no well was begun within one hundred twenty days from the date of the agreement, December 15, 1909, and that nothing was done towards doing so within that time. The evidence warrants the statement that on or before May 15, 1910, appellants paid to appellee $20 on the contract, and on or before June 15 another $20; that no further payments were made to appellee and that no deposits were made in the First National Bank of Winslow by appellants for him; that as late as July 18, appellee, not having received additional payments, went to the Winslow bank and found no money from appellants there for him; that on July 19, after finding no money in the bank for him, appellee made a tentative agreement with another person for the oil and gas rights in his land on more favorable terms, and on that day notified appellants that their rights therein were at an end; that the following day appellee closed his tentative agreement with such third person, and received, among other more favorable considerations for the oil and gas rights in his land, a large cash payment; that appellants, still asserting the existence of their rights under the agreement, on July 19, sent a check to the Winslow bank for appellee, and on July 21 they placed a drilling outfit upon the land, preparatory to carrying out the expressed intention of drilling a gas and oil well thereon, and this was the first move they had made to carry out their implied agreement to make exploration of appellee's land. This suit was begun July 27, 1910.

While it is not contended by counsel for appellants that the complaint is lacking in any essential averment to make it good to quiet title, it is earnestly contended that

1.  it does not contain sufficient allegations to authorize the granting of a temporary injunction. That ancillary injunctive relief may be granted to prevent a trespass to land, in aid of a plaintiff in possession in an action to protect his possession or to quiet his title, where the object of the trespass is to remove a part of the substance of the inheritance, cannot be doubted. Such relief has been granted to prevent the removal of trees, coal, valuable ores, asphaltum, stone and clay. *Thomas* v. *Oakley* (1811), 18 Ves., Jr., 184; *Bates* v. *Slade* (1885), 76 Ga. 50; *Leake* v. *Smith* (1886),· 76 Ga. 524; *More* v. *Massini* (1867), 32 Cal. 590.

That such a relief should be granted against a threatened trespass, the purpose of which is the removal of oil and gas underlying the surface, would seem to be still clearer, for obvious reasons based on the peculiar nature of these products.

The allegation in the complaint that appellants had unlawfully entered upon the lands of appellee with a drilling outfit, and had placed it in position, for the purpose

2.  of drilling an oil and gas well on the land, and were intending and threatening to drill the well, and would do so unless restrained, necessarily includes the purpose on the part of appellants to remove from the depths of the land any oil and gas that might be discovered.

On appeal from an interlocutory order granting a temporary injunction, the question of the sufficiency of the complaint is not deeply involved, and it will not be

3.  subjected to any technical tests when questioned for the first time in this court. The granting of a temporary injunction, to maintain the *status quo* until the final hearing, rests in the sound discretion of the trial court, and this discretion will not be interfered with on appeal,

unless it is made to appear that the court's action was arbitrary, or constituted a clear abuse of the discretion vested in it. The rule is that to authorize the court to grant such relief it is not necessary that a case shall be made out that will entitle the plaintiff to relief, at all events, at the final hearing. It is enough if the court finds upon the pleadings and the evidence a case that makes the transaction a proper subject for investigation in a court of equity. *Spicer* v. *Hoop* (1875), 51 Ind. 365; *People's Gas Co.* v. *Tyner* (1892), 131 Ind. 277, 16 L. R. A. 443, 31 Am. St. 433; *Home, etc., Power Co.* v. *Globe Tissue Paper Co.* (1897), 146 Ind. 673; *Gagnon* v. *French Lick Springs Hotel Co.* (1904), 163 Ind. 687, 68 L. R. A. 175; *City of Laporte* v. *Scott*, (1906) 166 Ind. 78.

Counsel on both sides discuss the proper construction of the contract, for gas and oil privileges involved in this case as controlling the question of the validity

4. of the order granting the temporary injunction, and it is true that upon that construction the ultimate right of appellee to succeed in his action depends, but it does not necessarily follow that the propriety of granting the temporary injunction depends on appellee's ultimate right to recover. The parties herein are at issue upon a question of their legal rights, and it was fairly necessary, in justice to both, for the court to preserve their rights *in statu quo* until those rights could be finally determined. It rested in the court's discretion to consider the relative harm and benefit, convenience and inconvenience, which might result to the parties from granting or withholding the writ, and to determine that appellee would suffer great injury and inconvenience from the court's inaction. 1 High, Injunctions (4th ed.) §13. It cannot be said that the facts involved would not have sustained the court's action even without a construction of the contract favorable to appellee.

But counsel on both sides treat the construction of the

contract as involved, it being contended on the part of the appellants that the monthly payment of $20 was to be considered rent, which, to save appellants' rights, need not necessarily be paid until the end of the year, or, at most, at the end of each month; while for appellee the contention is that, under the authority of *Dill* v. *Fraze* (1907), 169 Ind. 53, these payments must be held to be payable in advance, and as there was a failure to pay it was the right of appellee—appellants not having taken any steps to drill a well—to declare a forfeiture. To save further contention we decide the question.

We think the contention of appellee must prevail. Oil and gas leases or contracts are in a class by themselves, and the ordinary rule that forfeitures are not favored does not apply with full force to them, if at all. The provisions for a forfeiture usually found in them are generally held to be for the benefit of the landowner, and clearly enforceable by him where the lessee has done nothing to carry out the purpose of exploration, and has failed to make payments for the right to do so.

In the case of *Ohio Oil Co.* v. *Detamore* (1905), 165 Ind. 243, 249, in speaking of a similar contract the court said: "In this, as in other contracts of its class, the manifest purpose of the parties was exploration, and the mining of oil and gas. But here, to say the most of it, the grant is inchoate, and not absolute. It purports, upon its face, to grant all the oil and gas under the land, but in effect provides that, in consideration of $120, the grantee shall have six months in which to decide whether it will accept the grant by entering into possession and beginning the work of exploration. Viewed from end to end the contract amounts to nothing more nor less than a six-month option, with right of renewal, based upon a valid consideration, whereby the grantor bound himself not to lease the premises to another, and to give the grantee that length of time to consider and determine whether it would undertake the

development of the land upon the terms named. If the grantee had decided in the affirmative, and had entered upon the land, and proceeded with the execution of the contract, and completed a well within the option period, then acceptance would have been complete, and the grant effective."

In *Dill* v. *Fraze, supra,* a case involving a suit to cancel a gas lease, it was said: "The agreement contains an express provision for a forfeiture if a well is not completed within sixty days, unless the second party thereafter pays at the rate of $40 a year for each year such completion is delayed. The unit of payment was $40, and the question arises whether such payment was to be made in advance. While the ordinary rule governing rentals is that payment in advance is not required, unless so stipulated in the contract, yet, as the endeavor of the courts in the enforcement of agreements is to effectuate the intent of the makers, we are of opinion that, in the circumstances of this case, it should be held that it was the purpose of the parties that payment should be made in advance. * * * The contract before us distinctly contemplates that a forfeiture should result at the end of sixty days (a well not being then completed), unless the operator should pay the consideration for delay. This plainly required him to become an actor if he would save his rights. In such a case the owner has the privilege of declaring the lease forfeited at the end of said time, except as the other party pays the sum stipulated for the delay."

It was further held in the case of *Ohio Oil Co.* v. *Detamore, supra,* that the failure of the lessee to make payments provided to extend the time for drilling, similar to the monthly payments of $20 each provided in the contract in suit for that purpose, brought the option to an end.

The contract in the case before us contains no express covenant on the part of appellants to be performed by them prior to such time as they might discover oil or gas. They

do not expressly agree to drill a well, nor do they promise to pay the designated $20 a month in advance, or at any time. Taking into consideration the situation of the parties and the subject-matter of the contract, we are constrained to hold, on the authority of the cases last cited, that the contract in this case did not create the relation of landlord and tenant, but was a mere option granted to appellants by appellee, for a valid consideration, for the exclusive right to explore his land for oil and gas, which, by its very terms, was to expire by the inaction of appellants at the end of 120 days; that by the payment of $20 "each month thereafter" appellants could procure the extension of the option for a month at a time; that these payments were to be made in advance, and that upon the failure of appellants to act, by either beginning a well or making a payment, appellee had the right to declare their rights under the contract at an end.

The 120 days from the date of the contract ended with April 14, 1910. Two monthly payments of $20 each were made by appellants; and treating the monthly payments as being required to be paid in advance, appellants were delinquent in two payments when appellee gave them notice that their rights were forfeited. As said in the case of *Dill* v. *Fraze, supra,* at page 58, "there is little or no reason for the interference of a court of equity to prevent a forfeiture before operations have begun, where the operator has sinned away his opportunity under the contract. The wandering and vagrant character of oil and gas is recognized by the courts, and contracts pertaining thereto are to be construed with reference to the known characteristics of the business."

The order of the lower court granting the temporary injunction is affirmed.