[L. A. No. 7734. In Bank.—November 13, 1924.]

# W. W. TAYLOR et al., Appellants, v. FRANKLIN H. HAMILTON et al., Respondents.

[1] LEASE—OIL LEASE—LICENSES—CONSTRUCTION.—An oil lease which provides that on or before a stipulated date the lessee shall commence operations for the drilling or sinking of a well upon the leased premises, and that if he shall fail to so commence and prosecute such operations he will surrender the lease, or in lieu of such surrender will pay to the lessors a monthly rental in advance until such time as drilling is actually commenced, such extensions, however, not to exceed in all the term of ninety days, and which further provides that upon the failure of the lessee to fully and fairly comply with each of the conditions therein set forth, for sixty days after notice in writing so to do, by the lessors, then the lease shall terminate and be forfeited, is more than a mere license revocable at the will of the licensors; it is to be considered as a lease of the premises for the purpose of drilling for oil and gas, at least until said stipulated date, or, in default thereof, the option is given to the lessee to extend the time of commencing said operations for ninety days from that date upon the payment of rental in advance.

[2] ID.—COMMENCEMENT OF DRILLING OPERATIONS—PAYMENT OF RENT IN ADVANCE — TIME — BREACH OF CONDITIONS — FORFEITURE.—The failure of the lessee to commence operations within the time fixed in such lease, or in the alternative to pay rent in advance, constituted a breach of the lease and operated to lay the foundation for a forfeiture thereof.

[3] ID.—NOTICE PROVIDED BY LEASE—CONSTRUCTION OF PROVISION.—A notice provided by such lease that "Should the second party (the lessee) fail for sixty days (60) after notice in writing, to comply with his obligations to continuously drill as herein provided, then such failure shall operate as a forfeiture and cancellation of all of second party's rights and interest in this lease, except as hereinafter provided," did not extend the lessee's time to begin making his payments of rent pursuant to the alternative contained in the lease; it was evidently intended to fix the period

---

1. Liability of lessee in oil or gas lease under provision for rent in event of failure or delay in developing premises, notes, 20 Ann. Cas. 1165, 1168; Ann. Cas. 1917E, 1120; 44 L. R. A. (N. S.) 50, 54. See, also, 18 R. C. L. 1213.

Rent in lieu of development under oil and gas lease as payable in advance, note, 15 A. L. R. 604.

at which the failure of the lessee to commence and continue drilling operations should constitute a forfeiture of the lease.

[4] ID.—FORFEITURE—CONSTRUCTION—SECTION 1442, CIVIL CODE.—The construction of provisions in a lease providing for forfeitures is governed by the rule laid down in section 1442 of the Civil Code, which provides that "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created."

[5] ID.—NOTICE OF FORFEITURE—PROVISION FOR BENEFIT OF LESSOR—CONSTRUCTION.—The purpose of the notice relating to forfeiture is to insure to the lessors a strict and faithful performance of the terms of the lease or, in case of default, to retake the property. Therefore the provision for notice is for the benefit of the lessors and is to be strictly interpreted against them.

[6] ID.—NOTICE OF FORFEITURE—SUFFICIENCY OF.—The lessee having breached the lease in question by failure to commence operations within the time fixed in the lease, or in the alternative to pay rent in advance, a notice by the lessors to the lessee to the effect that unless the latter, within sixty days from the date of service of such notice, should commence operations for the drilling of a well for oil and gas upon the leased premises, the lessors would terminate and forfeit the lease, and demanding the commencement of said drilling within the time specified in the notice, and notifying the lessee that "we shall insist upon a strict performance of the terms of said lease," was sufficient.

[7] ID.—DEFAULT—NOTICE OF FORFEITURE—TIME.—The lease in question having provided that the lessee should commence operations "on or before the 9th day of October, 1921," and that if he should fail to commence operations within such time he would surrender the lease, or in lieu of such surrender pay a monthly rental in advance, and October 9, 1921, having been a Sunday and holiday, the lessee was in default on midnight of October 10, 1921, and the notice given by the lessors on October 11, 1921, to the effect that they would terminate the lease if the lessee did not comply with its terms was not premature.

[8] ID.—OPTION CLAUSE—PAYMENT OF RENT—TIME.—Payment of rent provided by the option clause in such lease, namely, that if the lessee pay rent in advance the default arising from a failure to commence operations within the time specified may be postponed for ninety days, must be made at the time agreed upon.

[9] ID.—PAYMENT OF RENT—TENDER—TIME.—Under such lease, the tender of rent on December 10, 1921, which was due on October 10, 1921, the preceding day having been a holiday, did not comply with the condition that the rent was to be paid in advance.

---

4.  See 6 **Cal. Jur.** 310; 15 **Cal. Jur.** 779. But see 18 **R. C. L.** 1214.

[10] ID. — OPTION — TIME. — Time is of the essence in exercising an option in leases of the character of the lease in question, and although the lease does not provide that time is of the essence of the agreement, where it is within the contemplation of the parties as shown by the provision for payment of rent in advance the courts will so construe the lease.

[11] ID.—FORFEITURE—NOTICE—WAIVER OF DEFAULT—CONSTRUCTION. Under section 1442 of the Civil Code courts will interpret forfeiture clauses strictly against the party for whose benefit made, and if there is anything in the notice given or any conduct on the part of the lessor showing a waiver of the default, it will be held that the default is waived and the forfeiture avoided. Less evidence is necessary to establish the waiver of a forfeiture than to establish the forfeiture itself.

[12] ID. — NOTICE OF FORFEITURE — NONWAIVER OF DEFAULTS. — The notice of forfeiture given by the lessors on October 11, 1921, did not operate to waive the default of the lessee of October 9, 1921,—the time when or before which he was to commence operations; nor did it operate to extend the time the rental was due from October 9th to December 9th, 1921, the notice not being susceptible of an inference that the forfeiture could be avoided other than by the commencement of operations within sixty days.

[13] ID. — NOTICE OF FORFEITURE — CONSTRUCTION OF. — The notice of forfeiture in question would not, in the absence of a showing that the operations were commenced within sixty days thereafter, amount to a waiver of the original default, nor to an extension of the term of the lease beyond October 9, 1921, for sixty days without the payment of rent in advance, nor does it require the lessee to do any new act outside the terms of the lease.

[14] ID.—DEFAULT—FORFEITURE—EQUITY.—The lessee having been in default under such lease because of his failure to commence operations within the time therein specified and to pay rent in advance, and the notice of forfeiture having been legally sufficient and it not having amounted to a waiver or an offer to extend the time for the performance of either or both conditions, there was an entire failure of consideration and the lease in question stood forfeited; and in such a clear case of forfeiture on the facts equity will not intervene to restore the lessee, or his assigns, to their right, title, and interest in the lease.

---

(1) 27 Cyc., p. 722.    (2) 27 Cyc., p. 736.    (3) 27 Cyc., p. 730. (4) 27 Cyc., p. 735.    (5) 27 Cyc., p. 738.    (6) 27 Cyc., p. 738.    (7) 27 Cyc., p. 738.    (8) 27 Cyc., p. 731 (1926 Anno.).    (9) 27 Cyc., p. 731 (1926 Anno.).    (10) 27 Cyc., p. 731 (1926 Anno.).    (11) 27 Cyc., p. 738.    (12) 27 Cyc., p. 738.    (13) 27 Cyc., pp. 730, 738. (14) 27 Cyc., p. 735.

APPEAL from a judgment of the Superior Court of Los Angeles County. Pat R. Parker, Judge presiding. Reversed.

The facts are stated in the opinion of the court.

Frank H. Snyder for Appellants.

Carnahan & Clark for Respondents.

LAWLOR, J.—W. W. Taylor and Lottie L. Taylor, plaintiffs, brought an action against Franklin H. Hamilton, Franklin H. Hamilton, trustee, G. L. Graul, and G. L. Graul, trustee, to cancel an oil lease upon the ground that it expired by reason of the limitation of time provided by the lease. The amended complaint, which was filed on January 13, 1922, alleged that the plaintiffs were the owners in fee simple of the east one-half of farm lot 42, American Colony tract, situated in what is known as the Signal Hill oil field, about three-quarters of a mile from the limits of the city of Long Beach, county of Los Angeles, containing ten acres, more or less, and that on the ninth day of June, 1921, the plaintiffs and the defendant Franklin H. Hamilton entered into a certain agreement of lease; that no monetary consideration was paid for the execution of said agreement; that said agreement provided that operations for the drilling of a well upon said premises should begin on or before the ninth day of October, 1921; that operations were not so commenced and on the eleventh day of October, 1921, the plaintiffs gave notice in writing to the lessee that they would ''terminate and forfeit'' said agreement unless operations for the drilling of a well for oil and gas should be commenced by said lessee within sixty days from the date of the service of said notice; that on December 10, 1921, defendant G. L. Graul, through a messenger, tendered to plaintiffs a check bearing the date ''Dec. 9, 1921,'' for the sum of $100 and another on December 17, 1921, bearing the date of that day, for the sum of $50, each payable to the plaintiff W. W. Taylor, as rental for said premises ''for a period running from October 9 to December 9, 1921,'' and from ''December 9, 1921, to January 7, 1922,'' respectively; that by the terms of the lease said monthly rental became payable in advance and was

due and payable on October 9, 1921, November 9, 1921, and December 9, 1921, respectively; that each of said checks was returned to said defendant, G. L. Graul, and postal receipts therefor received by plaintiffs; that said plaintiffs have elected to declare said agreement of lease to be forfeited by reason of the failure of the lessee to comply with the terms thereof; that the defendant G. L. Graul claims to hold an interest in said agreement of lease by assignment from the said lessee; wherefore the plaintiffs pray that said agreement of lease be ordered to be delivered up and canceled. The amended answer of defendants alleged that the first check returned was received by defendant G. L. Graul on December 15, 1921, and the second on December 22, 1921; it also alleged that the lease was prepared after numerous conferences between plaintiffs and defendant Franklin H. Hamilton concerning the substance and form thereof and was presented to and examined and read by plaintiffs and thoroughly understood by them; that defendant G. L. Graul since September 29, 1921, "has owned and held an interest in, to and under" the agreement of lease; that due to the geological surveys and examinations made by defendant Franklin H. Hamilton and the operations of said defendant in expending more than $20,000 in developing the land surrounding the ten acres embraced in the lease the said lease has acquired a substantial value and a present market value in excess of $50,000; that said defendants are now and were at the time of the service of the notice of default on October 11, 1921, ready, able, and willing to commence drilling operations on said premises under said lease "within the time limited thereby, to wit, prior to January 8th, 1922"; and that they tender and offer to pay to plaintiffs the sum of $150 and interest as rental in accordance with the lease. There is no dispute over the facts and it was stipulated that all the material allegations in the amended complaint and amended answer are true and that the stipulation shall be taken and considered as evidence of those facts.

The material provisions of the lease are as follows: (2) "That for and in consideration of the sum of $10.00 (ten) and the covenants herein contained, the parties of the first part do hereby let and lease unto the party of the second part, his heirs and assigns, the exclusive right of having, taking, drilling for . . . , operating for, and developing and

removing, petroleum, oil, naphtha, natural gas, asphaltum and other kindred substances in the following described lands: . . .

(4) "On or before the 9th day of October, 1921, the second party shall commence operations for the drilling or sinking of a well upon said premises and shall continue said operations diligently and continuously until a well has been sunk to the depth of two thousand (2000) feet, . . . or until oil has been found in paying quantities at a greater or lesser depth. . . .

(5) "Should the second party fail for sixty days (60) after notice in writing, to comply with his obligations to continuously drill as herein provided, then such failure shall operate as a forfeiture and cancellation of all of second parties rights and interest in this lease, except as hereinafter provided. . . .

(7) "It is hereby agreed that if said second party shall fail to commence and prosecute operations for drilling as hereinbefore provided, then the said party of the second part agrees that he will quit-claim and cancel and surrender this lease unto said parties of the first part, or in lieu of such surrender will pay to said parties of the first part, a monthly rental, in advance, amounting to $5.00 (five) per acre, per month, until such time as said drilling is actually commenced, but such extensions shall not exceed in all the term of ninety (90) days. . . .

(16) "Upon the failure of said second party to fully and fairly comply with each of the conditions herein set forth, for sixty (60) days after notice in writing so to do, by the parties of the first part, then this lease shall terminate and be forfeited, except as hereinbefore otherwise expressly provided. . . . "

The notice served on the lessee was dated October 11, 1921, and is as follows:

"To Franklin H. Hamilton, personally, and as trustee:

"You will please take notice that we will terminate and forfeit that certain lease for oil and gas, of date June 9th, 1921, now held by you from us, unless, within 60 days from the date of service of this notice, you shall commence operations for the drilling of a well for oil and gas upon the premises described in said lease. You having failed to commence the drilling of a well upon said premises on or be-

fore October 9th, 1921, as provided by the terms of said lease, we hereby demand that you now commence the drilling a well upon said premises within the time aforesaid, and we further notify you that we shall insist upon a strict performance of the terms of said lease.''

It was found that the notice of October 11, 1921, was premature, and held as a conclusion of law that no notice of forfeiture or of the termination of the lease having been given within the time or in the manner provided by the lease, the lease is not terminated and is in full force and effect, and that although the defendants are in default the performance of the agreement in the lease to pay rent, yet they are entitled to equitable relief and to be restored to their estate, right, title, and interest under the indenture of lease upon the payment of the rent due. The trial court seems to have reached the conclusion that although respondents are in default the delay in the payment of rental can be excused, that the damages due to delay are compensable and that, therefore, a tender by respondents of the rental due entitles them to be restored to their right, title, and interest in the lease under section 1492 of the Civil Code.

The appeal from the judgment for respondents is based upon three grounds: 1. The findings of fact do not support the conclusions of law. 2. Insufficiency of the evidence to justify the decision. 3. The judgment is contrary to law.

Appellants contend that prior to the discovery and production of oil the lease carried only a naked and exclusive privilege to enter upon the premises for that purpose, that is to say, the ''lease'' was a mere option to enter the demised premises for the purpose of exploring for oil and is not the lease of an interest in property, but a license. Respondents argue that although the rule in other jurisdictions is that a lease of oil land is a mere license, in California the interest of the lessee under an oil lease is an estate for years and a present interest and estate in land (*Jameson* v. *Chanslor-Canfield M. Oil Co.*, 176 Cal. 1 [167 Pac. 369]; *Chandler* v. *Hart*, 161 Cal. 405 [Ann. Cas. 1913B, 1094, 119 Pac. 516].)

[1] These authorities support this contention and render it clear that the lease in question is more than a mere license revocable at the will of the licensor. It is to be considered as a lease of the premises for the purpose of drilling

for oil and gas, at least until October 9, 1921, or, in default thereof, the option is given to the lessee to extend the time of commencing said operations for ninety days from that date upon the payment of rental in advance. The lessor did not commence drilling operations on or before October 9, 1921, nor did he ever do so; neither has he paid rent in advance.

[2] Respondents being in default in not commencing operations on or before October 9, 1921, and in not tendering, until December 10, 1921, the rental due on October 9, 1921, the conditions of the lease were therefore breached. The first question, then, is whether notice of the default was necessary before the lessors could declare the lease forfeited, and, if necessary, what was the legal effect of the notice actually given? In the first place, it is provided that the lessee shall on or before October 9, 1921, commence operations for the drilling of a well, and, in the second place, it is agreed that if said lessee shall fail to commence and prosecute operations for drilling he will quitclaim and surrender the lease or in lieu of such surrender pay monthly rental in advance. His failure to commence operations within the time fixed in the lease, or in the alternative to pay rent in advance, operated to lay the foundation for a forfeiture.

There are provisions in the lease providing for its for- feiture upon notice. The provision for notice in paragraph 5 thereof is as follows: "Should the second party fail for sixty (60) days after notice in writing, to comply with his obligations to continuously drill as herein provided, then such failure shall operate as a forfeiture and cancellation of all of second party's rights and interest in this lease, except as hereinafter provided." In paragraph 16 thereof the provision reads as follows: "Upon the failure of said second party to fully and fairly comply with each of the conditions herein set forth, for sixty (60) days after notice in writing so to do, by the parties of the first part, then this lease shall terminate and be forfeited, except as hereinbefore otherwise expressly provided." These provisions might appear at first glance to be somewhat inconsistent with the provisions of paragraph 7 for the cancellation of the lease for failure to commence operations on or before October 9, 1921, or to pay rental in advance, but when they are read together it would seem clear that it was the intent of the parties (1) that the

lessee should commence drilling operations on or before October 9, 1921, and that if he did not do so he would either cancel and surrender the lease or (2) *pay in advance* a monthly rental of $5 per acre until such time, not to exceed the term of 90 days, as said drilling was actually commenced. [3] The notice which is provided for in paragraph 5 of the lease did not extend the lessee's time to begin making his payments of rent pursuant to the said alternative. It was evidently intended to fix the period at which the failure of the lessee to commence and continue drilling operations should constitute a forfeiture of his lease. Since he failed to exercise the alternative by the payment of the stipulated rental in advance, which would have extended for an additional ninety days, the period during which he would not have been subject to such forfeiture, the lease is forfeited. In other words, these provisions, in effect, state a condition subsequent upon the happening of which the estate of the lessee shall become forfeited.

[4] The construction of provisions in a lease providing for forfeitures is governed by the rule laid down in section 1442 of the Civil Code: "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." [5] The purpose of the notice is to insure to the lessors a strict and faithful performance of the terms of the lease or, in case of default, to retake the property. Therefore the provision for notice is for the benefit of the lessors and is to be strictly interpreted against them. (1 Underhill on Landlord and Tenant, p. 625, sec. 391.)

[6] Respondents argue that the notice was required "(1) to point out definitely and precisely each of the conditions of which there was a breach, and (2) to demand their performance," and that the "only obligation resting on the lessee . . . was to 'quitclaim and cancel and surrender this lease' *or* in lieu of such surrender to pay rent"; and the notice as given was therefore not sufficient. The terms of the notice are clear and unambiguous and fully advised the lessee in what respect he was in default, the terms upon which it might be avoided, and that a strict performance of the terms of the lease would be insisted upon. We think the notice was sufficient.

In claiming that the notice was premature, respondents argue that the time within which they were required to choose whether they would surrender the lease, or secure, by the payment of rent, an extension of time for the commencement of drilling operations, did not begin until the original time in which the operations should have been commenced had expired, that the period for the exercise of such option continued at least one day, and that October 9, 1921, being a Sunday and a holiday, the lessee's right of election did not expire until midnight of October 11, 1921; and that no act of the lessors during that day or prior thereto could take away or modify such right. [7] This position ignores the established facts in the case that the notice was dated October 11, 1921, and that respondents were in default on midnight of October 10, 1921. The consideration for the lease was that the lessee begin operations on or before October 9, 1921, which means the actual development of the property, and the option clause in the agreement merely provides that if the lessee pay rent in advance the default arising from a failure of such consideration may be postponed for ninety days. [8] In options of this character such payments must be made at the time agreed upon. (*Mitchell* v. *Probst,* 52 Okl. 10 [152 Pac. 597]; *Cohn* v. *Clark,* 48 Okl. 500 [150 Pac. 467]; *Lamar* v. *Farmer,* 59 Ind. App. 501 [109 N. E. 791]; *Brown* v. *Wilson,* 58 Okl. 392 [L. R. A. 1917B, 1184, 160 Pac. 94].) Respondents have offered no evidence accounting for the delay in payment, even if it be assumed they might be entitled to equitable relief. It has been held there was no default where a check in payment of rent was put in the mail before the rent was due, but which was not received until after the date provided in the lease (*Kays* v. *Little,* 103 Kan. 461 [1 A. L. R. 675, 175 Pac. 149]), and this rests on the theory that the payment was seasonably made. [9] The tender of rent on December 10, 1921, which was due on October 10, 1921, the preceding day being a holiday, does not comply with a condition that the rent is to be paid in advance. [10] Time is of the essence in exercising an option in leases of this character, and although the lease does not provide that time is of the essence of the agreement, where it is within the contemplation of the parties as shown by the provision for payment of rent in advance

the courts will so construe the lease. (*Epperson* v. *Helbron*, 145 Ark. 566 [15 A. L. R. 597, 225 S. W. 345]; *Gillespie* v. *Bobo*, 271 Fed. 641; *Curtis* v. *Harris*, 76 Okl. 226 [184 Pac. 574].)

Respondents cite the case of *Consumers Gas Trust Co.* v. *Ink*, 163 Ind. 174 [71 N. E. 477], as holding "that a premature declaration of a forfeiture is not equivalent to an intention to declare a forfeiture." In that case the lease of oil land contained a similar provision to relieve by the payment of rent a default due to a failure to commence operations. The lessor accepted rent in advance for several years and before the last year had expired she claimed a forfeiture. It was held that the lessor was not entitled to a forfeiture before the agreed term of postponement had expired and "a demand of forfeiture at a time when she was not entitled to it was without legal significance." The lessors in the case at bar did not accept the rental tendered. They were entitled to give notice of forfeiture on October 11, 1921, the day the notice was given. The option had expired at midnight of the preceding day. *Jameson* v. *Chanslor-Canfield M. Oil Co.*, 176 Cal. 1 [167 Pac. 369], is cited to the proposition that the giving of notice under the forfeiture clause must be predicated upon a breach of some condition of the lease. In that case the notice required by the lease was given by only three of four joint lessors. The court said: "It is not necessary to resort to strict construction, however, to reach the conclusion that the forfeiture here provided for can be brought about only by the joint action of all the lessors. The event which causes the forfeiture is the failure of the lessee to perform any of the conditions embodied in the lease for a period of thirty days after a notification. . . . It is only upon the giving of this notice and the failure to perform the conditions mentioned therein that the forfeiture can be declared. This is the condition which must happen in order to give a right to declare the forfeiture. The condition cannot be said to have happened upon notification given by some of the parties of the first part or any number of them less than all. After the notification has been given by all the parties, a forfeiture may be brought about only 'if said first parties shall so elect.' Here again the action of all said first parties is necessary to the happening of the condition. It is argued that the

only purpose of the notification was to give information to the lessee and that this could be given as well by notice from one of the parties as from all. But the contract measures the rights of the parties in this respect, and, being a contract regarding a forfeiture and to be strictly construed, its requirements must be fully met before the right depending thereon can be complete." In this case there is no dispute that the provision requiring operations to be commenced on or before October 9, 1921, was not complied with. Therefore, the lessee was in default and the notice being sufficient respondents' contention that forfeitures are abhorred in oil leases is not involved since the right of forfeiture is expressly reserved in the lease. The case of *Chandler* v. *Hart*, 161 Cal. 405 [Ann. Cas. 1913B, 1094, 119 Pac. 516], is cited by respondents as holding that there is no departure from the rule that forfeitures are abhorred in the case of oil leases. The lease in that case, in consideration of the issuance and delivery of a certain number of shares of stock, purported to lease and demise a tract of 160 acres of land for a term of fifty years with the right to explore and develop said lands for the purpose of removing oil or gas and such other minerals as the same may contain. It was claimed that the lease was inoperative because the lessee did not explore or develop the land. The court said: "A lease may, of course, limit the uses which the tenant may make of the land, and the purposes for which he shall have the right of possession. This lease does limit the rights of the tenant, by particularly describing them. The implication is that it shall not be used by it for other purposes. The result is that the lessee was granted an estate in the land for fifty years for the purposes of discovering oil therein and of extracting and selling it, with the other incidental rights mentioned. . . . The lease does not require the lessee to begin operations under the lease within any specified time within the term. Forfeitures are not favored in law or equity. We know of no rule declaring that a demise of land for such purposes upon a full consideration received in advance, is forfeited by a failure of the lessee to develop and extract the oil, unless such right of forfeiture is reserved in the demise either expressly or by necessary implication from the expressed terms." As already stated, the lease here expressly reserved the right to a forfeiture,

and notice, the condition subsequent upon which the right to declare such forfeiture depends, having been served, the lease is forfeited.

It having been held that the lease was forfeited we will now consider whether the notice by implication amounted to a waiver of the forfeiture. Respondents contend that ''although the notice and demand was a worthless piece of paper, in any view of it, as a basis of any right in the plaintiffs in this action, it is nevertheless effective and conclusive upon them in the following respect, . . . it implied a demand for and an offer to accept the rent for the term of the extension preceding actual drilling operations. And as long as the demand continued and was not withdrawn, *it was a waiver* of the payment of rent *'in advance.'* '' **[11]** Under section 1442 of the Civil Code courts will interpret forfeiture clauses strictly against the party for whose benefit made and if there is anything in the notice given or any conduct on the part of the lessor showing a waiver of the default, it will be held that the default is waived and the forfeiture avoided. Less evidence is necessary to establish the waiver of a forfeiture than to establish the forfeiture itself. (*Knarston* v. *Manhattan L. Ins.*, 124 Cal. 74 [56 Pac. 773]; *Young* v. *Mutual L. Ins. Co.*, 2 Sawy. 325 [Fed. Cas. No. 18,168]; 12 Cal. Jur. 641, 642.) **[12]** It cannot be held that the notice waived the default of October 9, 1921, and operated to extend the time the rental was due from October 9th to December 9, 1921. The check which was tendered on December 10, 1921, purported to have been drawn for the payment of the monthly rental for said premises ''for a period running from October 9th, to December 9, 1921.'' This tends to show that the respondents did not consider the notice of October 11, 1921, to be an extension for sixty days of the time within which to begin operations without payment of rent. The notice is not susceptible of an inference that the forfeiture could be avoided other than by the commencement of operations within sixty days. It does not suggest that should the rent be paid the forfeiture would be avoided.

Respondents make the contention that because forfeitures are abhorred a waiver of forfeiture is favored; that appellants in rejecting the tender of rental made no specific objection as provided by sections 1501 of the Civil Code,

and 2076 of the Code of Civil Procedure; and that if a party claiming a forfeiture recognizes the continued validity of the contract the forfeiture is waived (12 Cal. Jur. 642). **[13]** We think the notice given by appellants would not, in the absence of a showing that the operations were commenced within sixty days thereafter, amount to a waiver of the original default, nor to an extension of the term of the lease beyond October 9, 1921, for sixty days without the payment of rent in advance, nor does it require respondents to do any new act outside the terms of the lease. The notice, we have shown, expressly declares that a strict performance of the terms of the lease will be insisted upon.

It follows from the foregoing that this is not a case in which it is necessary to determine whether the rule that forfeitures are abhorred in law and equity, and must be strictly interpreted against the party for whose benefit made, is abrogated in this jurisdiction as far as oil leases are concerned. In one of the cases cited by appellants, *Risch* v. *Burch*, 175 Ind. 621 [95 N. E. 123], it was said that "oil and gas leases or contracts are in a class by themselves, and the ordinary rule that forfeitures are not favored does not apply with full force to them, if at all. The provisions for a forfeiture usually found in them are generally held to be for the benefit of the landowner, and clearly enforceable by him where the lessee has done nothing to carry out the purpose of exploration, and has failed to make payments for the right to do so." However, in discussing an oil lease in *Acme Oil Co.* v. *Williams*, 140 Cal. 681 [74 Pac. 296], it was said: "While the general rule is, that forfeitures are discountenanced in law, there are occasions when the only protection a landlord has is through the exercise of this reserved right, and the case at bar presents one of those occasions. If the right of forfeiture could not be exercised under such circumstances, a lessor would be at the mercy of his lessee; his land would be burdened by a lease which, while it could, and should, be made profitable through the diligence contemplated, would in fact be profitless through neglect; the lessor could not make other arrangements for the development of his property and his interest in the fee in the oil district might consist of a small holding, surrounding which numerous other operators would be successfully

working, drawing off the oil to his irreparable injury. These are some of the peculiar circumstances surrounding leases of this character which favor the right of re-entry for condition broken.''

Respondents claim that under section 2076 of the Code of Civil Procedure and section 1492 of the Civil Code they are entitled to equitable relief upon the payment of the rent due with interest. **[14]** But the facts show that the lessee was in default on October 11, 1921, in not having commenced operations on or before October 9, 1921, and in failing to pay rent in advance. The notice is legally sufficient and as it does not amount to a waiver or an offer to extend the time for the performance of either or both conditions there is an entire failure of consideration and the lease stands forfeited. In such a clear case of forfeiture on the facts, equity will not intervene to restore respondents to their right, title, and interest in the lease.

Judgment reversed.

Richards, J., Lennon, J., Seawell, J., Shenk, J., Waste, J., and Myers, C. J., concurred.

Rehearing denied.