[Civ. No. 7419. Second Appellate District, Division One.—November 15, 1932.]

I. S. CLARK et al., Respondents, v. RICHFIELD OIL COMPANY OF CALIFORNIA (a Corporation) et al., Defendants; GEORGE D. NORDENHOLT et al., Appellants.

J. Marion Wright for Appellants.

Doyle, Clark, Thomas & Johnson for Respondents.

TAPPAAN, J., *pro tem.*—From a judgment in the sum of $2,811.01 entered as against appellants Nordenholt and Stevely this appeal is taken. As to the other defendants named in the complaint a nonsuit was granted.

The facts which form the basis of the action here involved are few in number. Respondents were the owners of certain real property and, as lessors, leased to one of the defendants named in the complaint the right to remove gas and oil therefrom, it being agreed under the terms of the said lease that respondents were to receive as royalty or rent 1/12 of all gas, oil and other hydrocarbon substances produced from said leased property. Thereafter on September 29, 1927, and subsequent to the making of said oil lease respondents made and entered into an agreement with appellant Stevely by the terms of which they agreed to sell the property upon which they had granted the oil lease, to appellant Stevely for the sum of $6,000, payable $2,000 at the time of the signing of the agreement, and the balance in two equal payments at one and two years respectively. This agreement provided that upon payment of the full purchase price respondents would deliver to the buyer a good and sufficient grant deed to the premises "free and clear of encumbrance excepting an oil lease between the seller and Pacific National Gasoline Company". There is no provision in this agreement that the buyer, William H. Stevely, should have possession of the premises agreed to be sold. It appears from the evidence that during the year following the execution of this agreement and at a time when the "buyer", Stevely, was not in default under the terms of the agreement, the property in question was drilled under the terms of the oil lease previously referred to, gas developed thereon and that the sum of $2,381.22 was paid to appellant Stevely as the 1/12 royalty saved to the lessor under the terms of the oil lease. This payment was made to appellant Stevely by the National Gas Syndicate, a partnership. It also appears that after the first year period as fixed in the agreement of sale, Stevely having defaulted in his payments, respondents instituted an action to quiet

their title to the premises in question and in that action all the rights of appellant Stevely were foreclosed.

From the record it appears that the oil lease upon the premises in question was assigned by the Pacific National Gasoline Company, the lessee named in the lease, to the National Gas Syndicate, a copartnership composed of appellant Nordenholt and three other persons who do not appear to have been joined in this action nor to have appeared herein. Respondent I. S. Clark during the months of October and November, 1926, wrote to both the Pacific National Gasoline Company and the National Gas Syndicate, asserting their, respondents', rights to the royalties under the oil lease, and setting up the claim that these royalties did not pass under the terms of the agreement of sale of the property in question to the buyer therein named. Appellant Nordenholt was president of the Pacific National Gasoline Company and signed the oil lease with respondent in his capacity as president of the corporation. It also appears that appellant Stevely, the buyer in the agreement of sale, never took actual possession of the property in question. Some testimony was introduced by appellants at the trial as to conversations had before or at the time the agreement of sale was signed by respondents. As to what was said at these conversations the testimony produced by appellants is as to its material parts directly contradicted by the testimony of respondent I. S. Clark. The questions thus presented were ones of fact, and as the trial court's implied finding is against appellants' contention, and is based upon conflicting evidence, the matter is not subject to question before this court upon this appeal.

The sole point urged by appellants upon this appeal is that the evidence does not support the finding of the trial court that respondents retained the benefits of the said oil lease after they entered into the agreement for the sale of the real estate or that appellant William H. Stevely agreed to purchase said property subject to said oil lease and the rights thereunder. The question thus presented, under the circumstances of the case as disclosed by the record here, involves the construction to be placed upon the so-called agreement of sale made between respondent and appellant Stevely. The sole question here presented is: Is the proposed "buyer" under the terms of an agreement to purchase real property calling for installment payments

of the purchase price over a period of years and providing that when the purchase price is paid in full that the seller therein named will deliver a deed free and clear of all encumbrances except an existing oil lease and which agreement does not provide that the buyer shall have possession of the property described in the agreement, entitled to collect and hold the royalties paid under the terms of the excepted oil lease? There is evidence to the effect that the buyer never entered into possession of the property in question, which must have the effect that his rights, if any, are those granted him under the sales agreement referred to. The testimony as to the facts and circumstances surrounding the making of this agreement is in conflict, as has already been stated, and the court's findings as to these facts and circumstances, it appears; must have been adverse to appellants, therefore appellants must rest their contention upon the terms of the sales agreement solely.

Appellants in support of their contention that the "buyer" named in a contract of sale of real property is entitled to the rents and profits arising from the property agreed to be sold, cite a number of cases which state a generally accepted equitable rule. The case of *Miller* v. *Waddingham*, 91 Cal. 277 [27 Pac. 750, 13 L. R. A. 680], cited by appellants, is illustrative of this, and at page 380 of the opinion it is said: "Upon the execution of this contract of sale the vendee of the plaintiff became vested with the equitable title to said land, and the plaintiff retained in himself the legal title as a security for the performance of the contract by the vendee." In this case and all the other cases cited by appellants the possession of the land covered by the contract of sale was in the "buyer" either under the terms of the contract or by the consent of the "seller". In the instant case the contract did not give possession to the "buyer" nor was there any evidence that would support a finding that the "seller" gave consent, either express or implied, to the "buyer" taking possession. The evidence showed, in fact, that the "buyer" never took possession of the premises in question and that the "seller" placed the *lessee* named in the oil lease in possession of the premises. "There was no stipulation in the contract exhibit A surrendering the possession of the property to the vendee; and unless there is such a stipulation in a contract like the one mentioned, it may be considered as settled in this state

that the vendor retains the possession until the legal title passes to his vendee.'' (*Stratton* v. *California Land etc. Co.,* 86 Cal. 353, 364 [24 Pac. 1065, 1069].) ''There is no presumption of law that the vendee in an executory agreement for the purchase of land has been put into possession. In the absence of anything in the contract from which it can be inferred or implied that he is to have possession, he has no right thereto.'' (*Crane* v. *Ferrier etc. Co.,* 164 Cal. 676, 678 [130 Pac. 429, 430].)

We have not found nor has any authority been cited here which would uphold appellants' contention that the ''buyer'' named in an executory contract to purchase real property, where such ''buyer'' was not entitled to the possession of the property agreed to be sold, was entitled to the rents and profits of the land agreed to be sold, during the period between the signing of the contract and the time when the ''buyer'' became entitled to a deed to the property. In other jurisdictions, under circumstances such as are presented by the instant case, it has been held that the ''buyer'' would not be entitled to such rents and profits. (*Iowa Railroad Land Co.* v. *Estate of Boyle,* 154 Iowa, 249 [134 N. W. 590, 38 L. R. A. (N. S.) 420]; *Bostwick* v. *Frankfield,* 74 N. Y. 207.)

In view of the fact that the agreement of sale expressly excepted the oil lease then upon the premises agreed to be sold, and that the property was at the time of the signing of the agreement of sale in the possession of the lessee under this lease, and that the ''buyer'' never had possession after the signing of the agreement nor right to possession under the agreement, it seems conclusive that the ''buyer'' is not entitled to the oil royalties under the agreement of sale and other evidence before it at the trial. The finding made by the court that the copartnership ''wrongfully paid'' the royalties to appellant Stevely was an inferential finding on this point. (*Warden* v. *Stoll,* 210 Cal. 374, 376 [291 Pac. 835].) This is doubly true if we accept appellants' theory as advanced in their brief that respondents occupied a position similar to that of a mortgagee. The effect of the removal of the gas under the terms of the oil lease would deplete the security by removing a part of the thing agreed to be sold. If the ''seller'' was to waive the right to this part of the security the agreement

should have so provided. The agreement made no such provision.

The cause of action as stated in plaintiffs' complaint is one for the recovery of unpaid rents and profits under the express terms of the oil lease. It does not appear from an examination of this pleading that plaintiffs had in mind or attempted to state a cause of action for the recovery of a designated fund or the recovery of money in an action in the nature of a common count. From the pleadings and evidence it appears that the duty to pay the rents and profits provided to be paid under the oil lease and therein designated as "royalties" had been assumed by the National Gas Syndicate, a partnership, of which appellant George D. Nordenholt was a member. Section 388 of the Code of Civil Procedure provides: "When two or more persons, associated in any business, transact such business under a common name, whether it comprises the names of such persons or not, the associates may be sued by such common name, the summons in such cases being served on one or more of the associates; and the judgment in the action shall bind the joint property of all the associates, *and the individual property of the party or parties served with process, in the same manner as if all had been named defendants and had been sued upon their joint liability.*" (Italics ours.) Under the provisions of the above-quoted section the trial court was justified in finding appellant, Nordenholt, liable for the unpaid royalties. The fact that the National Gas Syndicate attorned to appellant Stevely, and paid the royalties due respondents to him is not a defense to this action to recover them from the person legally bound to pay them. (*Calderwood* v. *Pyser*, 31 Cal. 333.) Under the circumstances as disclosed by the record and in view of the fact that the cause of action as stated is one for the recovery of rent or royalties and not for money as such, the evidence fails to support the judgment as rendered against appellant Stevely.

The judgment as to appellant George D. Nordenholt is affirmed, and as to appellant William H. Stevely it is reversed.

Conrey, P. J., concurred.

HOUSER, J., Dissenting.—I dissent. As was shown by their amendment to their answer to the complaint, the most important and, in fact, the controlling defense relied upon by the defendants in the action was that the plaintiffs "sold to said William H. Stevely, the said premises described in said lease, and all of the rights of the plaintiffs in and to said land, and in and to said lease, and all of the royalties and proceeds of the sale of gas, oil and gasoline extracted from said premises, and that thereafter said plaintiffs had no right, title or interest in or to said land, or the oil or gas or gasoline to be extracted therefrom, or in or to said lease, but held only the bare legal title to said land. . . . "

In reality, the only consequential and disputed issue of fact in the case was whether, on the sale of the property in question, the rights which had already accrued under the terms of the lease, or which rights might thereafter accrue to the lessor, who then was the owner of the property, were reserved to the plaintiffs; or whether such rights were, by the parties to the agreement, intended to be transferred to the purchaser, who is now one of the defendants.

But, although on the trial of the action much evidence was presented relating thereto, the trial court made no direct, or express, finding of fact on that issue—the one essential, determinative, issue in the case. It is conceded that the nearest approach made by the trial court to a finding of fact thereon was that the assignees of the lease "wrongfully paid" to Stevely (the purchaser) the royalties which should have been paid to plaintiff. The entire finding of fact, in which the words "wrongfully paid" were used, is as follows:

"That as soon as plaintiffs discovered that the royalties were being paid to defendant Wm. H. Stevely by the National Gas Syndicate, a copartnership composed of George D. Nordenholt, H. P. Taylor, E. L. Petitfils, and R. D. Clark, plaintiffs objected and demanded that said royalties be paid to them, but their demands were ignored and said National Gas Syndicate, a copartnership composed of George D. Nordenholt, H. P. Taylor, E. L. Petitfils, and R. D. Clark wrongfully paid, between the dates of October 1st, 1926, and June 1st, 1927, to defendant, Wm. H. Stevely, the sum of Two Thousand, Three Hundred Eighty-one Dollars

and Twenty-two Cents ($2,381.22), and said money should have been paid to the plaintiffs."

To my mind, the latter finding is insufficient as a declaration, either expressly or by implication, of the views of the trial court with reference to the vital fact pleaded by the defendants in their answer to the complaint.

In 24 California Jurisprudence, page 940 et seq., where many authorities are cited in support of the rule there stated, it is said that "it has been repeatedly affirmed that where a court renders a judgment without making findings upon *all material issues of fact,* the decision is against law, and constitutes ground for granting a new trial in order that the issues of fact may be determined, or for reversal upon appeal, provided it appears that there was evidence introduced as to such issue and the evidence was sufficient to sustain a finding in favor of the party complaining. . . . " No question is here raised as to the sufficiency of the evidence to sustain a finding of fact in the instant case in favor of the appellant.

Nor am I able to accept the case of *Warden* v. *Stoll,* 210 Cal. 374, 376 [291 Pac. 835, 836], cited in the prevailing opinion herein, as authority in substance that the finding made by the trial court to the effect that the assignees of the lease "wrongfully" paid the royalties which became due under the lease to the purchaser of the property, constituted an "inferential finding" on the issues of whether the rights and the royalties, which theretofore had been reserved to the lessor, passed to the purchaser of the property on the sale thereof. An examination of the record on appeal in the case to which attention has been directed discloses the fact that the action was one in the ordinary form to quiet title to certain real property; that regarding the tendered issue of ownership thereof, the only allegation of the complaint was that the plaintiff "is now and has been for a long time hitherto the owner in fee simple as her separate property", etc.; and that the answer of the defendants therein consisted of a specific denial of that allegation. Neither in the complaint nor in the answer *was any issue raised regarding the validity of a tax deed,* which appears to have constituted the basis of plaintiff's asserted ownership of the property. In such a situation, regarding the point that the trial court had failed to make a finding

of fact on a "material" issue, in discussing the question thus raised, the Supreme Court said:

"Appellant contends that the trial court failed to make any finding in reference to the validity of the tax deed presented by her, and contends that this amounts to a failure to find on a material issue. Such a finding, however, is not essential. The finding that plaintiff's claims are without merit is an inferential finding on this point. . . ."

Considering the question of the omission of such an express finding in that case, that is, as to the validity of a tax deed, it is clear that the tax deed in question was merely an item of evidence of the title of the plaintiff, and that as far as the validity of the tax deed was concerned, in that regard it occupied no different position in its right to be made a part of the findings of fact in the case than did any other relevant evidence. For example, supposing that the case of the plaintiff, instead of having depended upon a tax deed, had depended upon a statutory adverse possession of the property: In such circumstances, it is clear that it would not have been necessary that the facts tending to prove the genuineness, or even the existence, of tax receipts going to show the payment of taxes by the plaintiff, or his predecessor in interest, or the possession of the property by the plaintiff, during the statutory period, should appear among the express findings of fact made by the trial court.

In the instant case, this court is confronted with an entirely different situation. The fact omitted from the findings made by the trial court is not only material, but is indispensable as far as forming a basis for the conclusions of law and a judgment founded thereon is concerned. It was the essential and ultimate fact upon which, not only the cause of action of the plaintiff depended, but as well upon which rested the defense of the several defendants.

From a technical standpoint, it is also apparent that a statement that the royalties in question were "wrongfully" paid to the purchaser of the property, is not a finding of fact, but constitutes a conclusion of law. Whether the payment of the royalties to such purchaser was within the rights of the other defendants to the action; or, in other words, whether such a payment was "wrongful", was the ultimate question of law to be determined by the trial court.

The placement of such a conclusion of law within the findings of fact could not have the effect of changing its character.

In the prevailing opinion herein, stress is repeatedly laid upon the fact that the purchaser of the property was not placed in possession thereof. How could he be? It was an impossibility. Prior to the sale thereof, the owner of the property had leased it to third persons and had placed *them* in its possession. At the time the sale was made the lease was still in full force and effect; and consequently the owner himself of the property was neither entitled to its possession, nor able to place his grantor or any other person in possession.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 12, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 12, 1933.