[Civ. No. 21537. Second Dist., Div. One. Oct. 23, 1956.]

RAYMOND DISHMAN et al., Plaintiffs and Appellants, v. UNION OIL COMPANY OF CALIFORNIA (a Corporation) et al., Respondents; JOHN H. ROCHE et al., Defendants and Appellants.

Russell H. Pray, William C. Price, Pray & Price, Henry F. Walker and William A. Williams for Plaintiffs and Appellants.

Frank W. Doherty for Defendants and Appellants.

L. A. Gibbons, Douglas C. Gregg, A. Andrew Hauk, Lewis D. Lawrence for Respondents.

DORAN, J.—The present action for declaratory relief was brought to secure a determination of the proportion or percentage of certain sums of money impounded by the respondent Union Oil Company, resulting from oil drilling operations and allocable under contract to Lot 82, La Habra Heights Tract. The defendants Roche, as joint tenants, own a portion of Lot 82, and the plaintiffs Dishman, as joint tenants, own the remaining portion of said lot. Both the plaintiffs Dishman and the defendants Roche have appealed from the judgment.

In March, 1904, the Rudisills, owning several thousand acres of land, granted to the Union Oil Company the oil, gas and similar items in the lands which included Lot 82 here involved. In 1940 Union determined to explore the area for oil, and as stated in the trial court's memorandum, "concluded that it was advisable to enter into a contract with all the surface owners whereby they would as a unit participate to the extent of 10% of the net proceeds in any wells drilled by it in the entire large unit parcel." On April 1, 1940, Union entered into such an agreement with surface owners including La Habra Heights Company, the then owner of part of the lands formerly owned by the Rudisills, including Lot 82. The purpose of this agreement, as found by the trial court was "to gain and maintain the cooperation and good will of the owners, and their successors in interest, of the surface rights of the real property described."

The agreement provided that each month or period, not exceeding three months, Union would "set aside . . . a sum equal to ten per cent (10%) of the value of all oil produced, saved and removed" from the area. This sum was to be paid by Union "to each signatory Owner of lands . . . subject to this agreement, in the same proportion for each such

Owner as the assessed value of his holding (land and improvements thereon), subject to this agreement, bears to the total assessed value of all of the lands (and improvements thereon) then subject to this agreement, as shown by the Los Angeles County assessment roll for the fiscal tax year immediately preceding the date upon which Union may have started drilling operations . . . , which assessment roll is hereby fixed as the final criterion of proportionate values hereunder.'' The assessed valuation for 1943-44 as to Lot 82 was: Land $790, Improvements $2,080 (buildings) and $250 (trees), —a total of $3,120.

It is provided in said agreement that ''The right to receive payments . . . shall at all times be and remain appurtenant to the lands in respect to which such payments accrue and shall be and remain inseparable from the ownership of such lands. Any attempt to separate such rights and ownership, respectively, shall be without effect hereunder and shall not be binding upon Union.''

As stated in plaintiff-appellants' brief, ''Mr. and Mrs. Cole became the owners of Lot 82. The property had a very steep hill. . . . He decided to sell off this unimproved portion keeping the improved portion himself and he did so by deed dated November 21, 1944, to a Miss Deckert. By mesne conveyances this portion, deeded to Miss Deckert, became owned by defendants Roche by deed dated January 21, 1948. Mr. and Mrs. Cole retained ownership of the improved portion of Lot 82 until March 21, 1948, on which date they conveyed the same to plaintiffs Dishman. Plaintiffs Dishman paid $27,000 for this portion of Lot 82 and the defendants Roche paid $8,500 for their portion of said Lot.''

The trial court found that on the basis of acreage, the defendants Roche own 58.24 per cent of Lot 82 and the plaintiffs Dishman own 41.76 per cent, and in accordance with these percentages directed that division be made of the sums due Lot 82. It is plaintiffs' contention that apportionment should be made not according to acreage but according to value. The value of the portion of Lot 82 owned by the Dishmans including the residence thereon was stipulated to be 74.235 per cent and that of defendants Roche 25.765 per cent.

Section 1467 of the Civil Code provides that ''Where several persons, holdings by several titles, are subject to the burden or entitled to the benefit of a covenant running with the land, it must be apportioned among them according to the value

of the property subject to it held by them respectively, if such value can be ascertained, and if not, then according to their respective interests in point of quantity.''

It appears that section 1467 has never received judicial construction but the trial court in a memorandum ruling took the position that this section ''should be construed, it having been enacted prior to a discovery of oil in America, as applying to agricultural and perhaps other lands, but not to oil lands. If however, the statute should be held applicable, it seems to me that the property subject to the covenant running with the land may be construed as referring in the case of oil lands to the land acreage, without regard to the improvements thereon. If that may not be done, then of course my view is erroneous.''

In the cross-appeal of defendants Roche, ''It is submitted that Defendant as the successor of Deckert is entitled to 100% of the rights of Lot 82 in the Union Oil-La Habra Agreement'' for the reason that the Cole to Deckert deed ''grants all of the interest of Cole to Deckert by a writing which this Court can give full force and effect.'' This is based on the fact that Mr. and Mrs. Cole, owning all of Lot 82, in selling that portion to Deckert which now belongs to cross-appellants Roche, transferred to Deckert ''that certain contract and agreement dated April 1, 1940, executed by the La Habra Heights Company and the Union Oil Company. . . .'' It is the Roche claim that ''This language is a grant of *all* of the Cole interest'' in the agreement, and that therefore the Dishmans have no right to receive any of the money allocated to Lot 82 under the agreement. The trial court quite properly refused to accept this view and, as hereinbefore noted, apportioned the funds on the basis of acreage owned by the respective parties. However, as will hereafter appear, the mode of apportionment on the basis of acreage, is deemed incorrect.

''The position of defendant-respondent Union Oil Company of California (not an appellant herein) is essentially one of neutrality,'' as stated in Union's brief. Attention is, however, therein called to the fact that the agreement ''does not transfer any interest in the oil whatsoever,'' and Union requests that therefore ''this money payment be referred to as a payment and not as royalty or rent.''

The instant appeals present no serious controversy in respect to material facts, and the single point of law requiring attention relates to the mode of distribution of payments allocated to Lot 82, now owned in part by plaintiffs Dishman

and in part by the defendants Roche. As hereinbefore indicated, the cross-appellants' claim that the Dishmans are entitled to no part of the Union payments and that the Roches are entitled to 100 per cent thereof, is untenable and cannot be sustained. To hold otherwise would be to adopt a forced and unnatural interpretation of the language used in the deed from the Coles to Deckert. Moreover, as stated in the Dishman brief, "it is clear that the intent and purpose of the 1940 community agreement is to make ineffective any attempt to separate the right to payments thereunder from ownership of the land." Whatever these payments may be called "The right to receive payments . . . shall at all times be and remain appurtenant to the lands."

In the absence of some agreement between the parties as to the method of distribution, and there is none in this case, three possible theories are open, namely, (1) distribution according to the relative acreage owned by the parties, which was that adopted by the trial court; (2) distribution according to the relative values of the Dishman and Roche lands including improvements; and (3) distribution according to relative values not including improvements.

Whatever method is considered, a solution should be sought which will effect a distribution practical rather than theoretical; and one which will neither do violence to any intention evidenced by the written instruments nor to any applicable statutory or case law. Should acreage be taken as the deciding factor, the Dishmans will be entitled to receive 41.76 per cent of the payments, whereas, if apportionment be made on the theory of relative value of the Dishman and Roche parcels, appellants Dishman will receive 74.235 per cent. No case has been cited which furnishes a direct and positive answer to the problem.

In *Carlson* v. *Lindauer*, 119 Cal.App.2d 292, 304 [259 P.2d 925], involving the same 1904 Rudisill grant to Union Oil and the same 1940 agreement with Union, it was held that "The estate in the oil and gas when owned by Union was a profit *a prendre*" and when Union made the agreement "it granted to the owner of the land the right to receive future royalties, and incorporeal hereditiment, and an interest in land. . . . The agreement was a grant within the meaning of section 1462" of the Civil Code.

Whatever the present payments are called, the matter should receive no different or special treatment from that accorded in other cases, and it appears entirely logical to conclude all

payments allocated to Lot 82 should be apportioned in the manner required by section 1467 of the Civil Code, that is, according to value. As hereinbefore indicated, the value of the two parcels has been settled beyond controversy. If this statute applies, there is therefore no reason to resort to the matter of acreage in making an apportionment.

The language used in section 1467 of the Civil Code is general and the prescribed method of distribution according to value seems clearly intended to apply to any and all situations. Oil payments such as those here involved, created by an agreement which, by its terms, are made appurtenant to the land, are not excluded from its purview by any reasonable interpretation. To hold otherwise would amount to judicial legislation and to write into a statute something which is not there.

The assertion by defendants Roche that Union possessed no surface rights and that therefore a different rule should be applied, is without merit. As found by the trial court, under the original Rudisill deed, Union Oil acquired "petroleum, coal oil, naptha, natural gas, other hydro-carbons and like substances, including asphaltum and brea, *in and upon and under*" the described tract, with a "right to enter upon the surface" of the lands to explore, mine, drill and dig for the substances named. (Italics added.)

It is to be further noted that section 1467 requiring apportionment according to value of the property, does not mention improvements nor exclude any such improvements. Had it been intended to exclude improvements it would have been an easy matter to have so stated. ▮ It is fundamental that permanent improvements to land become as much realty as the land itself. Such being the case, it must be held that the statute contemplated the inclusion of improvements in determining value.

▮ The agreement itself, is persuasive if not decisive that improvements on the lands are to be considered as affecting value, and that assessed value rather than area shall be deemed controlling. As hereinbefore mentioned, the sum in question is to be paid by Union "to each signatory Owner of lands . . . subject to this agreement, *in the same proportion for each such Owner as the assessed value of his holding (land and improvements thereon), subject to this agreement, bears to the total assessed value of all of the lands (and improvements thereon)*." (Italics added.) There is no apparent reason why this measuring stick should not be applied all

along the line. Such method of division is consistent with the terms of the agreement as well as being in harmony with section 1467 of the Civil Code. Whether such section was enacted before or after the discovery of oil cannot be deemed important in the present controversy, and no California case exists as authority for excepting oil interests from the operation of such statute. Section 1467 is apparently a restatement of the common law in reference to apportionment of rents.

Whatever the payments under the present agreement be properly called, the situation is certainly analogous to the matter of rents. As said in *Callahan* v. *Martin*, 3 Cal.2d 110, 123 [43 P.2d 788, 101 A.L.R. 871], "The [oil] royalty return which the lessee renders to his lessor for this estate in the land is rent, or so closely analogous to rent as to partake of the incidents thereof." Likewise in *Standard Oil Co. of California* v. *John P. Mills Organization*, 3 Cal.2d 128 [43 P.2d 797], the court follows the principle laid down in the Callahan case, regarding oil royalty "as rent, an incorporeal hereditment, issuing from the profits of land and payable by the lessee in consideration of the privileges and estate vested in him under the lease," and is subject to apportionment. While these cases are not factually identical with that now at hand, the principles announced seem clearly applicable to the present controversy, and decisive thereof.

The judgment is reversed with directions to enter a judgment apportioning the payments involved between plaintiffs Dishman and defendants Roche in proportion to the assessed valuations of the real estate owned by such parties, including improvements thereon.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied November 13, 1956, and the petition of defendants and appellants for a hearing by the Supreme Court was denied December 19, 1956.